**Louis J. SETTINO, et al., Plaintiffs,**

v.

**CITY OF CHICAGO, et al., Defendants.**

**No. 85C 6666.**

United States District Court, N.D. Illinois, E.D.

Aug. 5, 1986.

On Motion for Reconsideration Aug. 15, 1986.

Jeffrey Taren, Kinoy, Taren, Geraghty.& Potter, Chicago, Ill., for plaintiffs.

Judson Miner, Corp. Counsel, Robert Karmgard, Asst. Corp. Counsel, Chicago, Ill., for defendants.

## MEMORANDUM OPINION
## AND ORDER

SHADUR, District Judge.

Louis Settino ("Settino"), Robert Wesolowski ("Wesolowski") and Carol Parker ("Parker") originally sued the City of Chicago ("City") and other defendants under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634,[1] challenging City's prohibition against persons over 35 years of age qualifying to become police officers. City moved alternatively for dismissal or summary judgment.[2] For the reasons stated in this memorandum opinion and order, this action is dismissed.

### Facts

Two of the three original plaintiffs, Wesolowski and Parker, were under 40 when suit was filed. One, Settino, was over 40 and thus literally within ADEA's protected class (ages 40 through 69, Section 631(a)).

On June 17, 1985[3] City announced the holding of an August 17 examination for qualification as a patrol officer with its

---

1. All citations to ADEA will simply take the form "Section—," referring to the numbering in Title 29 rather than to ADEA's internal numbering.

2. City's motion became fully briefed November 13, *1985.* It was, however, only last month the case was reassigned to this Court's calendar, and this Court has addressed the matter expeditiously.

3. All relevant dates occurred during 1985, so this opinion will omit any further year designations.

Police Department. On June 19 Settino and Wesolowski sought to apply to take the examination but were turned down because they were over age 35. On June 26 Settino filed an age-discrimination charge with Equal Employment Opportunity Commission ("EEOC"). Wesolowski tried to do so the same day, but EEOC refused to entertain his charge because he was under 40 (actually 39½) years old.

On July 26 (less than 60 days after Settino's EEOC filing) this action was brought, in part seeking injunctive relief. At the July 29 hearing on plaintiffs' motion for a temporary restraining order ("TRO"), involving no evidentiary presentation, the judge to whose calendar the case was then assigned denied the TRO for lack of irreparable injury—stating accurately that if plaintiffs won on the merits, a second examination could be ordered.

In fact City did allow each of the named plaintiffs and all others who had opted into this action as consenting plaintiffs (see Section 626(b) and its cross-reference to Fair Labor Standards Act, 29 U.S.C. § 216(b)) to take the August 17 examination. In the meantime EEOC filed its own action on August 16 challenging the same over–35 policy. EEOC's suit was thus filed within the 60–day period after Settino's charge was filed with it.[4]

As the final relevant development disclosed by the by-now-stale memoranda of the parties, City later posted a new examination to be held October 5 for all persons between the ages of 21 and 69. That examination's results were to be merged with the results of the August 17 examination to form a single hiring list. Though not vital to this decision, it may be assumed City did take that action.

### *Prematurity of Plaintiffs' Action*

Section 626(d)'s first sentence is short and—from City's point of view—sweet:

No civil action may be commenced by an individual under this section until 60 days

after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission.

For plaintiffs to stay in court, they must therefore find a way around the statute's literal language.

Since *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982) only one Court of Appeals appears to have dealt with the issue in terms directly applicable here. *Vance v. Whirlpool Corp.*, 707 F.2d 483 (4th Cir.), *supplemented on reh'g*, 716 F.2d 1010 (4th Cir.1983) gives Section 626(d) not only a literal but a jurisdictional reading that, if followed here, would deprive this Court of *power* to take plaintiffs' case as filed. At the conclusion of its extended discussion, *Vance*, 707 F.2d at 489 said:

We note finally that other circuits which have considered the question have held that the 60–day period of § 626(d) is jurisdictional and that the failure of the employee to comply with this waiting period will result in the dismissal of his private civil action. *Wright [v. Tennessee]*, 628 F.2d [949,] 953 (6 Cir.1980) (en banc); *Reich v. Dow Badische Co.*, 575 F.2d 363, 367–68 (2 Cir.1978); *Cannon v. University of Chicago*, 559 F.2d 1063, 1077 (7 Cir.1976) *rev'd in part and remanded on other grounds*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979). We agree with these circuits that the language of § 626(d) indicates that the 60–day notice period is jurisdictional, *Ewald v. Great Atlantic & Pacific Tea Co., Inc.*, 620 F.2d 1183, 1187–88 (6 Cir.1980), and that the 60–day requirement is designed to assure the primacy of conciliation managed by the Department of Labor in the remedial scheme of the ADEA. *See Reich*, 575 F.2d at 368. Accordingly, we hold that the district court erred in equitably modifying this requirement and entertaining Vance's suit.

---

**4.** Though the EEOC action was apparently filed at the instance of charges filed by someone other than Settino, he was also necessarily in-

cluded within the class for whose benefit EEOC sued.

Despite its earlier decision in *Cannon*, our own Court of Appeals—dealing with the EEOC aspect of the administrative filing requirement—has more recently taken a less stringent approach. Drawing on *Zipes'* treatment of the administrative requirements under Title VII as nonjurisdictional, *Stearns v. Consolidated Management, Inc.*, 747 F.2d 1105, 1110–11 (7th Cir.1984) held the ADEA administrative filing requirement not truly jurisdictional but rather a condition precedent to suit.

■ That difference in characterization, however, does not help plaintiffs. They did not, after all, satisfy the condition precedent to suit either: They did not wait the prescribed 60 days. Whether under the strict *Vance* test or the more forgiving *Stearns* reading, they were out of court when they began.

Nor can plaintiffs take advantage of the group of cases that have sometimes upheld earlier filing in discrimination cases during the statutory 60–day period, while the EEOC investigatory process is under way (see, e.g., *Bailey v. Delta Air Lines, Inc.*, 722 F.2d 942, 944 (1st Cir.1983) and cases cited there). All those cases involved the exercise of equitable jurisdiction to preserve the status quo, allowing already-employed persons to protect their jobs against retaliatory discharge while EEOC was looking into the matter. By contrast, no extraordinary equitable bypassing of the clear mandate of Section 626(d) was required in this case.[5] By making their demand and going to EEOC, plaintiffs forced City to act at its peril if it continued to adhere to its over–35 rule: As the prior judge held at the end of the TRO hearing, if plaintiffs were right on the merits City could have been forced to give them the same rights they would have been provided under the August 17 examination. In fact City did just that and more:

1. It allowed plaintiffs to take the August 17 examination.

2. To deal with all persons who were in the same class as plaintiffs, it also announced a later examination open to all in the ADEA-protected class, with results of that exam to be merged with those in the August 17 examination.

Plaintiffs also advance a fallback position, urging their suit should be treated as alive, but in limbo, until the 60–day period had passed. They seek to analogize the situation to that in which like relief was granted in *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979). But *Oscar Mayer* does not really give plaintiffs much comfort in that respect, for it specifically contrasted the administrative requirement covering state proceedings with the explicit provisions of Section 626(d) (441 U.S. at 762–63, 99 S.Ct. at), with at least the implication that failure to satisfy the latter would not lead to the same result of permitting the prematurely-filed lawsuit to remain pending until the administrative time clock had run.

More importantly, and as a truly dispositive factor, it was *within* the statutory 60–day period that EEOC filed its own lawsuit, *EEOC v. City of Chicago*, 85 C 7281 (N.D.Ill.). Section 626(c)(1), the very provision that authorizes private rights of action under ADEA, goes on to state:

> *Provided*, That the right of any person to bring such action shall terminate upon the commencement of an action by the Equal Employment Opportunity Commission to enforce the right of such employee under this chapter.

Under plaintiffs' own theory that their action could come into being as a viable lawsuit when the 60 days were up (somewhat like a springing use in the common law of future interests), plaintiffs' right to sue would have terminated under Section 626(c)(1) *before it arose*. That would fore-

---

5. In *Fields v. Village of Skokie*, 502 F.Supp. 456, 458–59 (N.D.Ill.1980), this Court rejected the efforts of Title VII plaintiffs to avoid the statutory right-to-sue letter requirement by seeking injunctive relief. As the text indicates, that holding would also support the decision here, though this Court need not now rule on the issue treated in the *Bailey* line of cases and touched on in *Fields*.

close this action's deferred blossoming into life August 26 (60 days after Settino's filing). It is therefore unnecessary for this Court to determine whether it would choose to follow *Jones v. City of Janesville*, 488 F.Supp. 795, 797 (W.D.Wis.1980), which held an earlier-filed individual ADEA lawsuit preempted by EEOC's later filing of its own action (and would thus dictate the same result of dismissal here).

One final point bears mention. Plaintiffs advance the novel position Wesolowski could sue before the 60–day period expired because that period never began for him— because he was not allowed to file with EEOC. That is unpersuasive for more than one reason, but one compelling reason is the false premise on which the contention rests (Plaintiffs' Mem. 6) (emphasis of "after" in original, emphasis of "may" added; footnote omitted):

> Defendants have asserted that because plaintiff Wesolowski was only 39¾ years old at the time he was barred from applying to take the police exam, he lacks standing to assert a violation of the Age Discrimination in Employment Act. They make this assertion despite the fact that it is uncontested that the decision whether to hire Wesolowski would not be made until *after* he turned 40. It is also beyond dispute that unless Wesolowski was allowed to take the 1985 police examination, he could not even be considered for employment at age 40, and that another police exam *may* not be given for 4–5 more years.

◼ As already stated, what really occurred—City's announcement of a prompt second examination whose results would be merged with those of the August 17 examination—demonstrates just how speculative Wesolowski's argument about what "may"

happen was. Real-world events proved Wesolowski's hypothetical rights—which could in fact arise only once he turned 40—never ripened at all. That shows why Wesolowski, as a person outside the ADEA-protected class whose rights might only theoretically be affected by his inability to take the August 17 examination, lacked standing in Article III terms when this action was filed.[6]

### Conclusion

Plaintiffs' action was premature for failure to satisfy the statutory preconditions to filing. No arguable equitable exception justifies ignoring that precondition. And before the action might have become viable, it was aborted by EEOC's institution of its own action. This case is dismissed.[7]

### On Motion for Reconsideration

This Court's August 5, 1986 memorandum opinion and order (the "Opinion") dismissed the Age Discrimination in Employment Act ("ADEA") lawsuit brought by Louis Settino, Robert Wesolowski ("Wesolowski") and Carol Parker against the City of Chicago and other defendants. Plaintiffs' counsel has just filed a motion and brief supporting memorandum seeking reconsideration of the Opinion.

Plaintiffs' counsel betray an all-too-prevalent misconception of the litigation process, in which the knocked-out combatant seeks to portray what has taken place as a mere warmup rather than as the main event. This Court has often had occasion to point out (frequently citing *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D.Va.1983)) the truly restricted role of motions for reconsideration—motions mentioned nowhere in the

6. Plaintiffs invoke a few cases that did permit ADEA standing to individuals outside the 40–to–70 age group. But in each of those a *present* employee who would be directly affected by forced retirement at an impermissible age—say 55—was held able to sue. That is of course wholly different from the doubly-iffy nature of Wesolowski's claim, which was not only totally contingent but was demonstrated to have been so by the actual course of events.

7. This Court also inherited this case with a partially-briefed motion for attorneys' fees sought by plaintiffs for their success in causing City to take the post-lawsuit steps described in the text. Nothing in the result here should be mistaken as a ruling on plaintiffs' entitlement or lack of entitlement to such fees. This Court will simply await a motion by either litigant on that score.

Federal Rules of Civil Procedure, but erroneously perceived by some lawyers as matters of routine in every lawsuit.

This is no exception to the common misuse or overuse of such motions. As to Wesolowski, counsel's memorandum has simply rehashed the same arguments advanced in the original briefing and found inadequate by this Court (see Opinion at 759). Of course this Court did not base its ruling as to the speculative nature of Wesolowski's claim on what took place *after* the lawsuit was filed. Wesolowski's claim was inherently speculative in standing terms when this action was filed, and the subsequent events merely confirmed that.

Finally, plaintiffs' counsel point to two Court of Appeals decisions not previously cited by them (*EEOC v. Eastern Airlines, Inc.*, 736 F.2d 635, 639–41 (11th Cir.1984) and *Burns v. Equitable Life Assurance Society of the United States*, 696 F.2d 21 (2d Cir.1982), *cert. denied*, 464 U.S. 933, 104 S.Ct. 336, 78 L.Ed.2d 306 (1983)), each of which disagreed with the *Jones* case mentioned in Opinion at 7 and held that previously-filed private ADEA actions survive a later filing by EEOC. Again counsel have missed the point.[1] Their action was *not* pending and viable before EEOC brought its action on behalf of the class of employees of which Settino was a member. Hence the plain language of 29 U.S.C. § 626(c)(1), and *not* its extended construction in *Jones*, foreclosed plaintiffs' action when—even giving plaintiffs the benefit of the "springing use" approach discussed in Opinion at 758—it could first have become viable.

In sum, nothing in the motion for reconsideration calls for a change in the Opinion. Reconsideration is denied.

---

**1.** As the Opinion said, this Court did not have to decide whether *Jones* was rightly decided. Even on the *Eastern Airlines-Burns* analysis, under which a properly filed private ADEA lawsuit continues in existence after EEOC chimes in with its own action, plaintiffs here could not qualify for that treatment *unless* this Court accepted their argument as to Wesolowski's right to bring a viable suit before the 60–day period was up. Once the latter contention was rejected, as it was, it was irrelevant which side of the *Jones* versus *Eastern Airlines-Burns* analysis was more persuasive.